# Department of Justice Authority Regarding Relocations, Reorganizations, and Consolidations

The provisions of 1989 supplemental appropriations legislation for the Department of Justice did not prohibit the Department from considering or planning for relocations, reorganizations, and consolidations that had not been previously reported to Congress.

Under the same legislation, the Department was also permitted to complete relocations, reorganizations, and consolidations that were begun prior to June 30, 1989.

August 28, 1989

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
FOR ADMINISTRATION, JUSTICE MANAGMENT DIVISION

This responds to your request of July 11, 1989, for our opinion on the effect of section 105 of the new law providing supplemental appropriations for the Department of Justice.[1] Specifically, you have asked whether the Department may engage in the consideration of and planning for relocations, reorganizations and consolidations that have not previously been reported to Congress. You have also asked whether the Department may obligate and expend funds to implement reorganizations which were reported to Congress prior to June 30, 1988, the effective date of section 105. This latter question is asked in the context of the reorganization of the Office of Policy Development ("OPD") which was reported to Congress on June 5, 1989.

For the reasons set forth below, we believe that the Department may plan relocations, reorganizations and consolidations. We also believe that the Department may complete the effectuation of relocations, reorganizations and consolidations that were begun prior to June 30, 1989. Because the reorganization of OPD was begun before June 30 and indeed largely completed by that date, section 105 does not affect that reorganization.

## I. Background

Prior to the enactment of section 105, the Department's reorganizations were governed by two provisions. The first, enacted as section 8 of the Department's 1980 Authorization Act, requires the Department to

---

[1] Dire Emergency Supplemental Appropriations and Transfers, Urgent Supplementals, and Correcting Enrollment Errors Act of 1989, Pub L No 101-45, 103 Stat. 97 ("Supplemental Appropriations Act" or "Act").

notify the House and Senate Judiciary Committees "a minimum of 15 days before" undertaking significant reprogramming, reorganizations and relocations.[2] The second, contained in the Department's most recent appropriations bill, requires fifteen days notice for the Appropriations Committee as well.[3]

The Department has consistently complied with the fifteen-day notice requirement. Recently, however, certain congressmen indicated that the notice provisions were part of an "unwritten agreement" that reorganizations would not be implemented unless the Appropriations Committees had actually approved the proposal. H.R. Rep. No. 89, 101st Cong., 1st Sess. 44 (1989). Because of the Department's failure to comply "with the understanding that any proposals are subject to the approval of the Appropriations Committees," *id.* at 45, a new provision was added to the Department's 1989 Supplemental Appropriation Act, *see supra* note 1, to bar all reorganizations within the Department until the end of the fiscal year:

> None of the funds provided in this or any prior Act shall be available for obligation or expenditure to relocate, reorganize or consolidate any office, agency, function, facility, station, activity, or other entity falling under the jurisdiction of the Department of Justice.

Supplemental Appropriations Act, § 105, 103 Stat. at 122.

---

[2] Pub. L. No. 96-132, § 8, 93 Stat 1040, 1046 (1979). The section directs "each organization of the Department of Justice" to provide notice in writing before

    (1) reprogramming of funds in excess of $250,000 or 10 percent, whichever is less, between the programs within the offices, divisions, and boards as defined in the Department of Justice's program structure submitted to the Committees on the Judiciary of the Senate and House of Representatives,

    (2) reprogramming of funds in excess of $500,000 or 10 percent, whichever is less, between the programs within the Bureaus as defined in the Department of Justice's program structure submitted to the Committees on the Judiciary of the Senate and House of Representatives,

    (3) any reprogramming action which involves less than the amounts specified in paragraphs (1) and (2) if such action would have the effect of significant program changes and committing substantive program funding requirements in future years;

    (4) increasing personnel or funds by any means for any project or program for which funds or other resources have been restricted;

    (5) creation of new programs or significant augmentation of existing programs,

    (6) reorganization of offices or programs, and

    (7) significant relocation of offices or employees.

Id at 1046-47 The provision has been incorporated into subsequent appropriation bills. *See, e g ,* Pub L. No. 100-459, § 204(a), 102 Stat. 2186, 2199 (1988) (FY 1989)

[3] Section 606(a) of Pub L No 100-459 states·

None of the funds provided under this Act shall be available for obligation or expenditure through a reprogramming of funds which: (1) creates new programs, (2) eliminates a program, project or activity, (3) increases funds or personnel by any means for any project or activity for which funds have been denied or restricted; (4) relocates an office or employees; (5) reorganizes offices, programs, or activities; or (6) contracts out or privatizes any functions or activities presently performed by Federal employees; unless the Appropriations Committees of both Houses of Congress are notified fifteen days in advance of such reprogramming of funds.

102 Stat. at 2227

## II. Analysis

### A. Planning

Your first question is whether section 105 prevents the Department from "engaging in consideration of and planning for relocations, reorganizations and consolidations that have not yet been reported to Congress."[4] We do not believe that it does. The statute forbids the Department to "relocate, reorganize or consolidate" — all verbs that connote action and implementation. Section 105 does not mention planning or preparation for proposals.

Nor does the sparse legislative history, *see* H.R. Rep. No. 89, 101st Cong., 1st Sess. (1989), suggest that Congress intended to prevent the Department from even thinking about future options. The prohibition was aimed at the Department's refusal to abide by the

> unwritten agreement that they *will not go forward* with reorganizations if the Appropriations Committees disapprove their proposals. In the past several months, the Justice Department and the SBA have proposed reorganizations which have not been approved by the Committees. The conferees have learned that both the Justice Department and the SBA *plan to go ahead* with their proposals contrary to the wishes of the Committees. The conferees agree that the only alternative left in this situation is to prohibit all reorganizations for the remainder of fiscal year 1989.

*Id.* at 44 (emphasis added). Read in context, this language confirms our conclusion that the statute was aimed at actual reorganizations, not the proposal of a reorganization.[5] We therefore believe that the Department may continue to take all the steps that precede a reorganization, relocation or consolidation, up to and including notice to Congress that it has a proposal under consideration.

### B. Reorganization of the Office of Legal Policy

As noted above, prior to the passage of section 105, the Department was authorized to implement its proposed reorganizations fifteen days after notifying Congress. The Department notified Congress about the proposed reorganization of the Office of Legal Policy ("OLP") as OPD on

---

[4] Memorandum for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Harry H. Flickinger, Assistant Attorney General for Administration (July 11, 1989).

[5] Indeed, unless the Department continues to plan and propose reorganizations, relocations, and consolidations, it is difficult to see how it will be able to demonstrate to Congress that it is willing to consult over these matters

June 5, 1989. The Department was therefore authorized to implement the reorganization fifteen days later, June 20. Section 105 was signed into law on June 30. Because OPD had largely completed its reorganization by June 30, we do not believe that section 105 affects its reorganization.

By its terms section 105 applies only to reorganizations undertaken after June 30, 1989, not to reorganizations that were completed by June 30, 1989. Moreover, the legislative history confirms that Congress' purpose in enacting section 105 was to protect what it perceived to be its oversight prerogatives by precluding future reorganizations without full congressional approval. Accordingly, section 105 was not intended to undo past Department actions. We conclude therefore that section 105 affects only reorganizations which the Department had not substantially completed by June 30.

Thus, whether section 105 applies to OLP depends on whether the Department had substantially completed the reorganization of OLP into OPD by June 30. We have been advised that the Department had taken all the significant steps necessary to reorganize OLP by that date. The Attorney General had signed a new organization chart reflecting the existence of OPD within the Department. Mr. Boyd had moved from his previous job in the Department to become the Director of OPD. A former Deputy Assistant Attorney General in OLP had been named Deputy Director of OPD. New stationery using the OPD letterhead had been ordered and put into use, and the new title "OPD" rather than "OLP" had been used in official documents. We believe that these steps, which were completed by June 30, constituted the reorganization of OLP into OPD.[6] Therefore, we believe that OLP's reorganization into OPD was complete when section 105 became law. Because section 105 is prospective in application, we do not believe that section 105 applies to the OLP reorganization.

We recognize that Representative Smith sent a letter, dated June 27, 1989, stating that the Appropriations Committee of the House of Representatives did not approve of the reorganization. This letter, however, had no legal effect on the Department's authority to effectuate the reorganization. Even if it had been sent within fifteen days of the notice given by the Department on June 5, the letter could not affect the Department's authority to execute the law. That can only be affected by passage of a new law, not by the disapproval of a congressional committee. *INS v. Chadha*, 462 U.S. 919 (1983).

## III. Conclusion

For the reasons stated above, we believe that Department officials may continue to study and plan for any future reorganizations, including all

---

[6] Indeed, we are not aware of any other steps that are necessary in order to create OPD.

preparations that would previously have preceded congressional notification. We also believe that section 105 was not intended to undo essentially completed reorganizations. Because OLP's reorganization into OPD was complete by June 30, 1989, the reorganization is unaffected by the passage of section 105.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*